# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 8, 2013

## STATE OF TENNESSEE v. KIMBERLY WILSON WENTZEL

**Appeal from the Circuit Court for Marshall County**
No. 11CR110    Robert Crigler, Judge

---

**No. M2012-02315-CCA-R3-CD - Filed December 10, 2013**

---

A Marshall County jury convicted the Defendant, Kimberly Wilson Wentzel, of six counts of prescription fraud and two counts of identity theft. After a sentencing hearing, the trial court sentenced the Defendant as a persistent offender and imposed concurrent eleven-year sentences for each of the Defendant's eight felony convictions. The trial court ordered the Defendant to serve her entire sentence in the Tennessee Department of Correction. The Defendant now appeals, contending that the trial court erred when it denied her request for alternative sentencing. After a thorough review of the record and applicable law, we conclude that the trial court properly denied alternative sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

Robert Dalton (at trial), Lewisburg, Tennessee, and Hershell D. Koger (at sentencing and on appeal), Pulaski, Tennessee, for the Appellant, Kimberly Wilson Wentzel.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Robert Carter, District Attorney General; Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

This cases arises from the Defendant's fraudulent purchase of prescription drugs using the Drug Enforcement Agency ("DEA") number of a friend who was a nurse practitioner.

A Marshall County grand jury indicted the Defendant for seven counts of prescription fraud and three counts of identity theft. The Defendant was tried April 25-27, 2012, and the jury found her guilty of six counts of prescription fraud and two counts of identity theft. The trial court sentenced the Defendant to concurrent eleven-year sentences for each of the eight Class D felony convictions, to be served in the Tennessee Department of Correction ("TDOC"). The Defendant now appeals the trial court's denial of alternative sentencing.

## A. Trial

Because the Defendant only challenges the denial of alternative sentencing, we summarize the evidence presented at trial, viewed in the light most favorable to the State, as follows:

Jeffrey Mitchell, a pharmacist at Fred's, testified that on June 18, 2011, a woman claiming to be Summer Keasler called the pharmacy and asked that prescriptions for Lortab, Xanax, and Phenteramine be filled for a patient named Kayla Coop. He stated that he knew Ms. Keasler as a nurse practitioner in the area. He testified that he called the doctor's office where Ms. Keasler was employed to verify the prescriptions and was told that Ms. Keasler had not called them in. He stated that he was not on duty when the prescriptions were picked up.

Raquel Gonzales, another pharmacist at Fred's, testified that a woman identifying herself as Kayla Coop came to the pharmacy on June 20, 2011, and stated that she was picking up the three prescriptions. She stated that the woman paid cash for the prescriptions. During her testimony, Ms. Gonzales identified the Defendant in the courtroom as the woman who purchased the prescriptions. She testified that Mr. Mitchell called her later that day and told her that the prescriptions were not verified by Ms. Keasler's clinic. Ms. Gonzales called the police and filed a report. The pharmacy technician working on June 20 also identified the Defendant as the woman who came to the pharmacy to pick up the prescriptions.

Randall Jean, a pharmacist at Kroger, testified that on March 5, 2011, she also received a call from a woman purporting to be Ms. Keasler and that the caller provided Ms. Keasler's DEA number over the phone. The caller requested a prescription for Xanax to be filled for Kim Wentzel, and the prescription was picked up the next day. The pharmacy technician at Kroger also testified that a caller identifying herself as Ms. Keasler called to request three prescriptions for Lortab, Xanax, and Phenteramine for "Kayla Roop." The technician stated that she recognized the caller's voice as the Defendant's because the Defendant had been a customer at the pharmacy for a while and the technician had "seen her and spoken to her" often enough to recognize the Defendant's voice. The technician stated that she later confirmed that the prescriptions were "forged." The technician testified that

2

the Defendant later came to the pharmacy to pick up the prescriptions and identified the Defendant in the courtroom. Another Kroger pharmacist testified that after the technician had received the phone call, she hung up the phone and told him that the woman on the phone purporting to be Ms. Keasler "sounded just like Kim Wentzel."

Summer Keasler, the nurse practitioner and victim of the identity theft crime, identified the Defendant as a patient she had seen at the Nashville Pain Center in Brentwood, Tennessee, and at North Medical Clinic in Chapel Hill, Tennessee. Ms. Keasler stated that the Defendant had used two different names at the clinics, Kimberly Wilson and Kimberly Wentzel. Ms. Keasler stated that in June 2011, she was not actively treating the Defendant as a patient and that she did not call in any prescriptions to Fred's or Kroger for the Defendant, or authorize any other person to do so.

The Defendant testified that she and Ms. Keasler had a "close" relationship and that Ms. Keasler frequently gave the Defendant medical advice. The Defendant testified that Ms. Keasler had written many prescriptions for the Defendant. The Defendant denied calling Kroger on March 5 to order a prescription for Xanax for herself, and she denied posing as Ms. Keasler on the phone. The Defendant also denied picking up the prescription at Kroger, claiming someone else had forged her signature. She later stated that the prescriptions Kroger had on file for her were valid and that the prescriptions she picked up from Fred's were for Ms. Keasler. At the conclusion of the evidence, the jury found the Defendant guilty of six counts of prescription fraud and two counts of identity theft.

## B. Sentencing and Restitution Hearing

At the sentencing hearing, the State entered a presentence report, which set forth the following information about the Defendant: The Defendant, who was fifty years old at the time of sentencing, was born and raised in Maury County, Tennessee. She reported completion of two years of a pre-dental hygiene degree at Columbia State University but did not obtain a degree. The Defendant married Darrell Wentzel in 1991, and together they had two children. The Defendant reported having suffered a heart attack and further reported that she had been diagnosed with manic depression, bipolar disorder, and several other mental health conditions. She also reported having been diagnosed with breast cancer. The Defendant reported that she became "addicted" to prescription drugs in 1995 and that she successfully completed a twenty-one day inpatient rehabilitation program and remained part of the program until 2009. She reported that neither she nor her husband had jobs but that she receives a disability check since she resigned from her employment due to her breast cancer diagnosis.

From 1996 to 2003, the Defendant received four convictions for prescription fraud,

3

one conviction for facilitating aggravated robbery, and one conviction for prescription forgery. For her 1996 prescription forgery and facilitating aggravated robbery charges, the Defendant was placed on Community Corrections in 1997 and ordered to serve thirty-days in jail. Her Community Corrections sentence was subsequently revoked when the Defendant did not report to jail, and she was ordered to serve out her sentence in TDOC. For her 2001 prescription fraud charge, the Defendant received a probation sentence, which was revoked when she was charged with a felony in another county. The Defendant was re-released on parole, which she subsequently violated in 2003 based upon another felony charge, as well as her failure to maintain employment and report as instructed. In 2004, the Defendant was placed on two years probation, and in 2006, a violation warrant was issued for the Defendant's failure to report and failure to pay probation fees. The warrant was subsequently dismissed.

In a statement given to the officer preparing her presentence report, the Defendant stated that:

> [T]hese charges are from two prescriptions from June 2011 at Kroger Lewisburg, TN and Fred's Lewisburg, TN. I did pick up the meds at Fred's but did not at Kroger. After this happened was driving to the (?) [sic]. Once there, I was told I was talking to people not there. After getting back on my mental health meds and stabilizing, I was let go to come home. That is when I was arrested on Fred's prescription. I was in court when I was given the other charges and re-arrested. While out on bond, I continued to Centerston [sic] and took mental health meds. Its not an easy [sic] to admit that I am a person with serious mental health disorders. The person that testified against me had been my friend, the nurse [practitioner]. I did not understand or I didn't want to. I am an addict that fell weak after many years. Sad but true.

At the hearing, the Defendant testified that she was guilty of the eight crimes for which the jury had convicted her. She acknowledged that she had been on parole twice and that both times her parole had been revoked. She also stated that she had violated a previous probation sentence but that the judge had dismissed the violation warrant. The Defendant admitted that on the day the violation warrant was dismissed, she called in a prescription for herself from the courthouse and that as a result, her Community Corrections sentence was revoked. The Defendant agreed that she had befriended Summer Keasler and that as a result of their friendship she was able to obtain Ms. Keasler's DEA number and use it to order prescriptions for herself.

The Defendant's mother and a neighbor both testified that the Defendant was a good mother and asked the trial court to order an alternative sentence so that she could be at home

4

with her family, particularly her children. The Defendant's husband testified that one of their children had health problems and needed her mother to care for her. The Defendant's husband agreed that he had been convicted of aggravated robbery, in which the Defendant had also been involved, and agreed that her parole had been revoked twice.

At the conclusion of the hearing, the trial court denied the Defendant's request for alternative sentencing, citing the following reasons:

> [C]onfinement is needed to protect society by restraining a [D]efendant who has a long history of criminal conduct and also less restrictive measures than confinement have frequently or recently been applied to the [D]efendant.
>
> Again, as I mentioned before, apparently Community Corrections, that kind of rehabilitation, is something that [has been] tried and failed in the past for this [D]efendant.
>
> I know her family is here. At some point the public would have no respect for the court system for somebody to repeatedly commit felony offenses and to keep getting out on probation.
>
> In my opinion it is necessary under the facts and circumstances to deny alternative sentencing and a split sentence.

The trial court sentenced the Defendant to eleven years for each of her convictions, with the sentences to be served concurrently. The trial court ordered the Defendant to serve her effective eleven-year sentence in the TDOC. It is from this order that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied her an alternative sentence. She contends that she was "eligible" for alternative sentencing because her crimes were not crimes against persons and because she does not meet the three criteria provided in Tennessee Code Annotated section 40-35-102(5). The State responds that the Defendant did not and has not presented any evidence that she is a good candidate for alternative sentencing, particularly based on her criminal history, and that the trial court did not abuse its discretion in ordering her to serve her sentence in confinement. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law

5

and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Bise*, 380 S.W.3d 682, 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Recently, our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2010) provides as follows:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within subdivision (5) of Tennessee Code Annotated section 40-35-102, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A. § 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)  Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

At the conclusion of the sentencing hearing, the trial court discussed the factors that, in its view, indicated that confinement was necessary for the Defendant. The trial court first found that the Defendant was a Range III, persistent offender who had "failed to comply" with conditions of prior sentences she had received involving her release into the community and that she had violated parole and probationary sentences multiple times. The trial court found that confinement was "necessary" in this particular case to protect society from someone with an extensive history of criminal conduct and that alternative sentences had clearly failed in the past for the Defendant.

7

In our view, the evidence at trial supports the trial court's denial of the Defendant's request for alternative sentencing. The evidence proves that the Defendant is a persistent, Range III offender, and that she has six prior felony convictions. As we have noted, Range III offenders are generally not presumed to be considered favorable candidates for alternative sentencing.[1] The Defendant's criminal history with prescription fraud is extensive and past efforts at rehabilitation have clearly failed on multiple occasions. Additionally, the Defendant has violated the terms and conditions of the alternative sentences afforded to her in the past. The record supports the trial court's determination that confinement was necessary in this case based on the Defendant's criminal history and repeated failures to comply with alternative sentencing. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude that the trial court properly denied the Defendant alternative sentencing. In accordance with the foregoing reasoning and authorities, the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[1]Further, the Defendant is not eligible for probation because her sentence is greater than ten years and is, arguably, not eligible for community corrections because her prior conviction for facilitation of aggravated robbery. *See* T.C.A. 40-35-106(a)(1).